May it please the Court, my name is Eric Brent Bryson, my colleague at the table is John Thayer Clark. Together we represent the appellants Lakeisha Miller, Billy Murphy, and three minor children who at the time of the relevant incident were six, Jaquala, Brianna, who was three, and Kiara, who was one. I would respectfully request three minutes of my time for purposes of rebuttal. It is undisputed that on December 21st, 2000, that Miller's long-time significant other, Mr. Murphy, went to the Las Vegas Justice Court to take care of some checks which had been returned for non-sufficient funds. It is also undisputed that Ms. Miller learned while being at Mr. Murphy's sister's house about an amnesty program that was being offered. Mr. Bryson, we've read the briefs. I think you can assume the panel is pretty familiar with the facts. I understand that. Then we'll move to section 1983. Section 1983 creates a cause of action, as this Court is aware, for any person acting under the color of state law that violates the constitutional rights of another. That's May v. County of San Bernardino and a whole litany of other cases. I don't think that it can be successfully argued that within the definition of Tennessee v. Garner that the children were not seized for purposes of the Fourth Amendment. It is stated that when an officer restrains the freedom of a person to walk away, he has seized that person within the meaning of the Fourth Amendment. The children, it is undisputed, were taken into a cell with their mother. Their mother was handcuffed, was shackled to the wall. The children watched as their mother was shackled. Watched as the door was unlocked, opened. They were all placed in, and then the door was locked and closed. It is also undisputed that at the time of this seizure, that being placed in this locked holding cell, the children were not the subject of any criminal process, were not committing a crime, did not pose a threat to the safety of the officers or to the public in general. Thus, the relevant inquiry under the Fourth Amendment seizure is whether or not the officer's by a standard of objective reasonableness. Professor, let me ask you a question. This is not an uncommon situation where a person is taken into custody and there are young children. Let's take a hypothetical where a police officer stops a car for some traffic violation, runs a warrant check on the driver, finds out there's a felony warrant, places the driver in custody. Would it be improper under your view of the civil rights laws to place the children in the back seat of the police car while the officer conducts what the Supreme Court now says is the right to search the entire vehicle after probable cause for arrest? Excellent question, Justice Taubman. Excellent answer. I hope that I do. Okay. Let's hear it. In essence, that would still be a seizure, but it would not be a violation of objective reasonableness. They were put behind a cage or partition with their mother in the back seat of the police car for up to 30 minutes while the officer made arrangements to turn the children over to a family friend or a CPS person? It would have to turn upon a factual inquiry of that specific case. That's not the facts of this case. This case, there were reasonable alternatives. The hypothetical question that you have posed... You're trying to convince us that the mere, you called it a seizure, whatever, detention of the children for, and I guess the record shows up to 30 minutes in this case... 30 to 35 minutes. ...constitutes a Fourth Amendment violation, right? A seizure of their person. And in my hypothetical, wouldn't the same situation attain? I believe that it would attain, but then we have to get to the relevant inquiry, which would be, was the officer's conduct guided by a standard of objective reasonableness going through the factors? In your hypothetical, if I'm understanding it correctly, you have someone that has been stopped for a traffic violation out in the middle of the public someplace, and I'm assuming also for purposes of your hypothetical that there's no other adult in the car other than the one person. It's just the mother and the young children. I understand. At that point, then, the government certainly has a compelling interest, I would submit, to safeguard the safety of the children. And then under that circumstance, until either a family friend could come, which would probably be impractical under your scenario, more likely a CPS worker could come and transport the child to a safer area. Or maybe the police officer could transfer or transport the family to the police station and have the family friend or the CPS worker pick up the children at the police station. Absolutely. And using that objective criteria in the analysis, I think it would pass constitutional muster. Okay. So if I understand your argument correctly, and I'm not trying to put words in your mouth, let me just recharacterize it and see if you agree with this. The civil rights violation has to be something more than the mere seizure of the children, the temporary detention, the taking them into custody, if we want to use that term? Absolutely. Because we can all foresee, as you correctly did in your hypothetical, instances where it's appropriate that a state may have to take custody for a brief time of children. That's not the case. There was no compelling interest when you weigh the governmental interest under the Fourth Amendment against the children's integrity rights. And probably no right... But it's your idea of what should have been done with regard to the children. Multiple alternatives were available, Justice Hugg. They could have allowed to have remained in the lobby area. The testimony and the facts are uncontradicted that for 15 minutes they waited together in the lobby area until... But there have to be someone there to watch them, I presume, because they're small. There could be. I'm talking about the appellant Miller could have been there with the children. That would have been one alternative, to simply have the appellee say, we're going to have to place you under arrest. We're going to hold you here. Because there was absolutely no indication whatsoever that they posed a threat to anyone. As a matter of fact, they were in their pajamas. But it's still a detention of the children. It would still be a detention, but under the analysis that I just went through with Justice Tallman, it would not rise to the level of being offensive to... That's the key, is whether the way in which they were held is offensive. Yes, whether it violates the standard of objective reasonableness. Absolutely. Another alternative could have been that, Ms. Miller, we're going to take you into custody. Another officer is going to stay with the minor children until, A, a family member could come and pick them up or, B, they could be transported to child haven, which is like CPS. Is that always then a contested issue of material facts, such that summary judgment could never be entered in a civil rights case? And if the answer to that question is yes, then how does that square with what the Supreme Court told us in Saussure v. Katz? Well, Saussure v. Katz, as the Court is well aware, is probably the landmark case in recent years having to do with qualified immunity. But it also told us that we have to engage in the two-step analysis, right? And the first thing we have to determine is whether or not there was a constitutional violation. And that is part of what we discussed earlier. Whether or not there's a constitutional violation turns upon whether the officers, for purposes of the Fourth Amendment, whether the officers' conduct was objectively reasonable. That's the key for the Fourth Amendment as to my Would there always be a constitutional violation? No. But there should always be an inquiry as to whether or not, looking at a litany of factors, a totality of the circumstances, if you will, as to whether or not this officer's conduct was reasonable under the law. And can that be done on summary judgment? I believe that that would be an issue under most circumstances, perhaps, but not always, because I think it's a question of the court. The district court here purportedly did that, did it not? Well, the district court here actually found, quite surprisingly to me, that there was absolutely no constitutional violation and didn't really go into a lot of analysis. I would like to move to the 14th, unless there are more questions. I think I understand your I do have one question, though. Yes, sir. You speak of being reasonable. Isn't it the question is whether the detention itself is reasonable? Is it not? And then we talk about excessiveness. In actuality, you could break it down into those two points. Yes, it is the – and I think it's really one question divided into two subparts. Is the detention reasonable and was it carried out in an objectively reasonable manner by the officer? Did I answer your question? Moving to the 14th Amendment, this Court has recognized a right to familial cause of action under Section 1983, Wallace v. Spencer, Byrd v. Guest, Moreland v. Las Vegas Metropolitan Police Department. Part of the cases that this Circuit has based this upholding of the cause of action on is the fact, I believe, that the Supreme Court has recognized that a parent possesses a fundamental right to the companionship, care, custody, and management of the children, that be Santosky and also Meyer. The 14th Amendment analysis – Are you speaking out with regard to her significant other, common-law husband? Mr. Murphy, Nevada doesn't recognize a common-law marriage, but Mr. Murphy and Ms. Miller for the interference with their familial relationship, the interference with the care, companionship, and custody of the children. If Ms. Miller was lawfully taken into custody pursuant to a felony arrest warrant, she's not going to be able to bring that claim, is she? Well, she would not be able to bring a Fourth Amendment claim. She would be able to bring still, I believe, a 14th Amendment claim for the interference. Interfering her from her companionship? Yes, because when she is shackled to the wall and her children – But she wasn't separated from her children. That's why they put her in – put the children in there. She was – it was not a physical separation. I agree. That's the next part of my argument. No, there was not a physical separation, but there was an emotional separation, and there was a psychological separation. As I understood the record, one of the young children basically clung to her, you know, screaming and crying, and so the officers decided not to physically separate them because the child didn't want to leave the mother, which is certainly understandable. That is understandable, but unfortunately, that's not objectively reasonable. I can't imagine – So you think the more reasonable thing to have done would have been to rip the three-year-old child from hanging onto the leg of the mother and put the child out in the reception area or – Absolutely, and that was the new policy that was promulgated, if you will, by North Las Vegas two months after this incident, which based upon Roberts' own affidavit states it was changed on this incident. It states, it is the policy of the North Las Vegas Municipal Court not to permit children to sit in the holding cell with the parent or arrested individual being taken into custody. As a matter of evidence, that's a subsequent remedial measure, isn't it? So we can't rely on that to help you establish your civil rights, are we? Actually, we can. Under F.R.E. 407, it is – you're correct, Justice Tolman – it is a subsequent remedial measure. However, it can be admissible for purposes of showing precautionary measures or safety that the municipality was on notice of at the time. So there's an exception under F.R.E. 407. Certainly can't be shown as a subsequent remedial measure, but it can go to precautionary. But one of these children was one-year-old. And that would be the child, Justice Goodwin, that would probably be least affected, although that's the child – That's the one that wandered off when they opened the door to the cell. Well, it wasn't wandered off. That's the one – What do you want them to do, go play in traffic? Absolutely not. But the child didn't wander off. The child was kicking at the door, slamming on the door, and then Officer Jablonski looked in and saw that these children were inside the jail cell. He unlocked the door, but still prevented the youngster, the one-year-old, from leaving, pushing him back in. A continued seizure. I would submit to the Court that if you have one officer, okay, that is – says it's okay to lock the door and put the children in there, another officer that says, well, we've got to open the door, that that's an issue of fact. So assuming, as North Las Vegas has – An issue of fact or – I mean, does it sort of underscore the – I don't know how to characterize it, but the helplessness of the officers in this situation? You're sort of damned if you do and damned if you don't. You open the door and then the one-year-old is going to wander off, you know, God knows where, but then you've got to keep an eye on the other two children, one of whom may want to stay clinging to the mother, and who knows what the third one's going to do. I'm just – I'm having a hard time seeing a constitutional violation here. Well, I understand, and when you say it opens the door, you're right. It opens the door based upon a complete lack of deliberate indifference and lack of training by North Las Vegas to its officers. What you're saying is that the officers were negligent. I don't hear an intentional violation of a known constitutional right, which is what I thought Section 1983 was enacted to address. Absolutely, and let's make it clear. Negligence does not give rise to a Section 1983 violation, and we're not alleging negligence as to the 1983. What we're stating is this. The policy of North Las Vegas was as follows during this time, and this is based upon Robert's affidavit. As originally existed and as amended in March 2000, the bailiff manual did not contain any formal policy about children in need of supervision. Nevertheless, the custom of the North Las Vegas court was that a bailiff was to exercise his or her discretion to determine what to do with the children when parents are placed in the custody. Therefore, North – I think the district court then invoked the Nevada immunity statute because it found that this was a discretionary decision on the part of the bailiff, is that right? That's correct. I'm not at that portion. I'll be happy to discuss if you want to discuss in our rights. I'm still under Monell municipality liability as to this policy. In other words, what North Las Vegas had was a policy of no policy. Complete discretion. What's wrong with a policy that gives discretion to the officer in this situation? Well, you can have discretion within certain parameters. Certainly no official policy. I would hate to think by a governmental entity would grant discretion to the level where an officer believes it's okay to violate constitutional rights. I mean, the framers – Circular reasoning. We got to get to the violation first. And you're arguing that because of the fact that they gave too much discretion, I guess, to the bailiffs, that therefore it shows deliberate indifference. And I'm having a hard time making that logical leap that you're asking us to make. Well, the logical leap is if a city, in this particular case, Las Vegas, North Las Vegas, has a policy saying, Police Officer A, do whatever you want to do with these kids, which is in essence what that policy says. Police Officer A must still understand the contours of the well-established law. It's not quite that open-ended, though, is it? Doesn't the policy contemplate that if a person is taken into custody and there are young children, that the children will be turned over to some responsible person, whether it's a family member, another member, an adult, or, if necessary, to the child protective people? The policy doesn't say that. What the policy effectively does is this. It shows that North Las Vegas knew to a certainty that its employees would confront this type of situation. Number two, it presented the employee with a difficult choice, the kind of which training or supervision would make less difficult. And this policy was the moving force behind the constitutional violation. This policy of complete discretion was the moving force, a rare case it may be, but was, this is the rare case where the policy was a moving force behind the constitutional violation. Let's go back to Judge Hugg's question. If the officer was faced, the bailiff was faced with a difficult choice, what choice would you have had the bailiff make that would have avoided the claim constitution? What Miller stated in her deposition, which is a part of the record, leave us out in the lobby until someone can come or until... She's now under arrest for a felony, so, you know, she doesn't get to pick and choose where she gets to sit now. Alternative number two, take me into custody, put me alone in the jail cell, have an officer, which is now the current policy, sit with the children until either A, a friend or family member can come and assist the children, or B... Now we have at least one hysterical child who's been physically separated from the mother that the child was clinging to, and I'm not sure how that's a better choice under your answer to my question. Well, I guess we would have to go back to what I perceive to be one of the greatest constitutional rights that the framers of our Constitution wrote, and I do not say that with some kind of rhetoric, which is the right to be free from a seizure without probable cause, without due process. These children were guilty by association, and yes, it would have been better to have a screaming child outside of a jail cell than inside a jail cell watching their mother shackled and having the individual say, this is something you're going to go to prison for for a long time. So is the test, as you framed it earlier, offensiveness? Must we find that this conduct shocks the conscience of the court in order to declare a constitutional violation? No, I don't believe you need to rise to the level as the Honorable Judge Hatter did in a case very similar in Martini. He found it shocked the conscience level under very similar facts. However, I believe the correct standard would be deliberate indifference, although I do believe it shocked the conscience. Briefly, as to the governmental... How do you get away from the negligence problem when you put it in terms of indifference? That's failure to plan properly, failure to anticipate, failure to take precautions. But isn't that just another way of describing garden variety negligence, which state court juries deal with all the time? The state court juries deal with that all the time. From the Monell standpoint, from the 1983, Justice Goodwin, I state that the North Las Vegas's policy was one of deliberate indifference. They didn't care. They gave complete discretion in answer as to the NRS qualified immunity section that we're speaking of. I submit to the court that there's two cases. Hagebloom is one where it says in a close case, the Nevada Supreme Court has favored a waiver of immunity. And the second case that I would... Judge Goodwin's negligence issue, or are you now moving into immunity? If you are, you're out of time. I understand. I was trying to answer Judge Goodwin's question not only as to the 1983, where you must have at least deliberate indifference for failure to train, but also he mentioned the governmental courts. And I wanted to explain how that differs under the Nevada revised statute under this last case, which would be... I'll give you another minute to do it. But it seems to me to be a tenuous relevancy to the question. So go ahead. Thank you, Justice. I would direct the court to Wayment versus Dorley Nash Holmes, where it stated that public policy should not allow immunity to stand and insulate its officers from suits where intentional bad faith conduct is demonstrated. Here, bad faith conduct is demonstrated, I would submit to the court, by having the mother shackled to the wall once she's already in handcuffs in front of the children. And second, the statement made by Roberts to Miller stating, this is something that you can go away to prison for for a long time, four days before Christmas. Regarding the ministerial or operational aspect under the Nevada revised statute, we would withdraw that argument and stand on these two. I'd like to ask two questions. One, I want to make sure, is the basis for the child's action is the fact that they were seized, to start with. They had to have been seized for the constitutional violation, right? Correct. Well, suppose the police didn't seize them at all. They just take the mother, put the mother in the cell, and say, children, you can fend for yourself. Is there a constitutional violation there? No, there would not have. In that particular case, that would be an action of negligence, a tort negligence. But no, it would not be a constitutional violation because there was no seizure, per se. I guess one could argue, although it might be a tenuant. Would that have been a reasonable thing to do? No, I don't believe that would have been a reasonable. So the police were kind of a tough spot there, weren't they? They were in a tough spot. But how to remedy that particular issue that you just raised, Justice, would have been to say, you know, police officer B, you're going to stay with these kids until we can either find somebody to come and get them or transport them to an appropriate facility. It would have remedied the whole issue. Thank you, Your Honor. Thank you, counsel. We'll hear from counsel for the state. Good morning. May it please the court. Todd Bice, representing the city of North Las Vegas and Bailiff Edna Roberts. I would like to touch upon, basically, four topics this morning. One of them is a factual issue to clarify a couple of points in the record. The second is to talk about the issue of whether or not a constitutional violation occurred in this case. The third is to address, even if a constitutional violation occurred in this case, is there liability, and the fourth is to address, if we get that far to the state law question. With respect to the issue in the record, I want to clarify one point that I was presented in the opening argument. And that is the notion that the felony warrant had been dealt with that morning. I believe the record actually shows that the felony warrant was a valid warrant and was outstanding. What had transpired was, is that Mrs. Miller, I think, or Ms. Miller, wrongfully believed that her husband had dealt with it. Was there a challenge to probable cause for the arrest of the mother? No, there was not. All right. Do you want to move on to the next? Yes. The other point I would like to address, then, is the notion that the children or the question, when did the children become hysterical? I think it is crystal clear from the record that the children became hysterical the minute that the mother was confronted in the lobby. And the mother was placed in handcuffs. And the mother was placed in handcuffs because she had an outstanding felony warrant, and that is the policy. The children then clinged on to the mother at that point in time. I think a very sensible one is to place the mother in handcuffs. Was there any real danger that she was going to find if they just put her in the cell and no handcuffs? That's in front of the children. It's not a very good policy. Judge Hugg, I can't stand here in front of you with 20-20 hindsight and dispute that fact. I think that you're probably right. I think there are a lot of different ways this could have been addressed in 20-20 hindsight. And that was a bad one. I agree with you on that. But nevertheless, whether we think it's a good policy or not, the policy traditionally, and I can't represent what other jurisdictions do, but the simple fact of the matter is when someone is arrested on an outstanding felony warrant, they're going to be handcuffed. And in this particular case, Even when they're in the police station, huh? Even when they're in the police station. That's true. I mean, that is going to happen. In this particular case, I cannot stand here in front of you and tell you that there's any evidence in the record that she was a physical threat to anyone because I don't believe that there is anything in the record. Again, with 20-20 hindsight, that she was a physical threat. I do believe, though, that the record does indicate that she probably could be characterized as a flight risk because one of the reasons that the warrant was outstanding for her is because she had failed to appear in court on the felony charge to begin with. She was going to flee and leave her children? I don't know about that. But my only point in raising that, Jeff Thug, is the simple point is the city cannot leave someone who has an outstanding felony warrant in the lobby, which is, I guess, one of the arguments that's being made is that we should have just told her, well, you've got an outstanding felony. You just sit there until someone comes and retrieves your children. With all due respect, that's just not going to happen, and it can't happen. The police have got to take those people into custody, and they have to do it then. My only question was about the handcuffs. I agree you have to take them into custody. And I agree with you that in hindsight, it would certainly be my preference that she had not been handcuffed, especially once she had been placed in the cell, that the handcuffs, at least at that point in time, should have probably been removed. I don't believe that it creates a constitutional claim that they weren't removed, but I can sit here and say, yes, if I had been there, I'd like to think I would have removed them. You don't normally handcuff somebody in a cell, do you? Actually, I believe, Jeff Thug, I can't answer that question for you, and the record doesn't speak to it. But actually, I think that they do. In this particular, because the cell's a little unique. The cell is in, really, an office building. This isn't a jail. You go through the door. There's just secretarial stations all around. But I don't deny that it's a cell either, because once you go through the door, it's a white room, concrete, painted completely white, with an aluminum bench in it and a bar along the wall, which is where they do, they normally put one handcuff on your arm and put a handcuff on the bar as well. And that is how the procedure normally happens. And that, I believe, is what happened in this case. But that does bring us back to the question of. So this was the classic holding cell. She would be held there until such time as she was transferred to the Clark County Detention Center or to court? To the North Las Vegas Detention Center or to court, correct. This is the holding cell when someone is, something happens in court. They're then taken to this cell, and they're placed in there until a police officer can come and deal with them. The bailiffs are the ones who place them in there, and the defendant in this case, Roberts, is a bailiff. The unfortunate set of circumstances that was presented were obvious. You had three small, very upset and distraught children who, as Miss Miller herself testified in her own deposition, had the children been forcibly removed from her, pried away from her, they probably or may very well have become worse in terms of being upset and the hysteria. The officer in this particular case, under these unfortunate circumstances, had to make a judgment call. And the judgment call that the officer made was she had three small children, one of whom was wrapped around basically the leg of the mother. She had to do something with them. She decided that since the holding cell was empty, there was no one else in there, that she could place them all in there until such time as she could make arrangements for either child custody services to come and get the children, which is basically in Nevada is known as child haven, or the mother can release the children into the custody of someone else. And that's what the mother wanted to do. The mother wanted, she asked if arrangements could be made for someone who could come and pick up the children and take them. And that was done promptly. There wasn't a lot of delay in that process. Once she was into the holding cell, it took a few minutes to go get the form, to get the form filled out. The mother has to sign the form, give the name of the contact person. One hand because she got the other hand handcuffed to the bar. You're right about that. You know, I just, you know, I don't know about a constitutional violation, but it sure doesn't make a lot of sense to put the mother in there, handcuffed to this bar on the wall with her three children there for fear that she'd break, someway break out of that room and abandon her children and escape, it just, but I know you know that. I do know that. And obviously there was another officer that felt the same way because another counsel, my colleague is correct, another officer came into the room and said, and took the handcuff off and he guarded the door while they were there. But nevertheless, there isn't a constitutional violation here. The police have to deal with children under these sorts of circumstances. It's an unfortunate set of circumstances. But respectfully, it was of the parent's making for not having dealt with these warrants in a timely and appropriate manner. Or maybe for coming in for the amnesty program. Well, no, you know, you can't fault people for coming in for the amnesty program, but you can't come into the amnesty program if you have an outstanding felony warrant in, when I say another jurisdiction, it is another jurisdiction. It just happens to be the county jurisdiction. The amnesty program, I take it, was like for traffic. Yeah, it's to deal with small misdemeanors. It's over the holiday season. They basically send out, you know, they tell the media, listen, if you want to come in and deal with your outstanding warrants and pay up your fines, we'll let you do it. You won't risk jail time. It's the holiday season. That's how we're going to handle it. But this was the lump of coal instead of the sugar cane. That is correct. That is what happened. Because she did have this outstanding felony warrant from another jurisdiction. At the end of the day, this officer had to make a judgment call. She made the call that she thought was best to deal with these hysterical children under some tough circumstances. That doesn't rise respectfully to a constitutional violation. As you said, Judge Tallman, you know, when the police stop a car, they have to put the child somewhere, and they will typically put them in the back of the cruiser. By the way, the door's locked on the inside of the cruiser. You can't get out of it. You're basically in a cage in the back of that cruiser, and you will sit there, and you may sit there for an extended period of time. It's not, it is, I guess, technically a seizure, or it is technically a detainment, but it's not, certainly isn't an unreasonable one. And in this particular case, the officer, faced with these hysterical children, thought it was best to keep them with the mother, and the place that they would keep them with the mother was in the cell. Could have they forcibly removed them and placed the children in an office and had another guard guard the children? I suppose, in hindsight, they could have done that. I'm not sure that it would have been any less traumatic, even I think the mother acknowledged in her deposition, that it could have been more traumatic for them. If you're going to have armed officers come in and forcibly, you know, pry a child away from a mother, that could be very traumatic. In this particular case, they decided, well, we'll get the friend here, and the friend got there pretty quickly. It was about a half an hour, got there, saw the children, the children recognized the friend, and were therefore able to leave without the police having to use force to remove them from the mother. It's an unfortunate set of circumstances, but not a constitutional violation. Let me just address also briefly the claim by the parents about loss of, basically, I guess, a family relationship. In this particular case, well, let me back up. Obviously, the law can, in certain circumstances, recognize that if the government does something to someone's child to such a magnitude to cause the loss of that child, whether it's a permanent loss in death, which is what typically the cases are addressing, or, I suppose, you could have an injury to such an extent that you have basically lost the child, because it's a physical injury, which is a permanent loss. You know, you could cause brain damage to a child or something like that, and that the government ought to be accountable for that. I don't really dispute that fact. But in this particular case, if you were to recognize a loss of familiar relationship in a case like this, then the police will always be subject to such a suit, because it's going to be traumatic any time the parent is seized in the presence of a child, which is what happened here. That's really the only claim. A parent was seized in the presence of a child, and the child has an adverse reaction to that seizure. And that's going to happen always. It's going to happen in the hypothetical that you gave about the parent who was arrested in the automobile. The child is going to see the seizure. The child is going to see the parent handcuffed and placed into the squad car. I assume it happens frequently in domestic violence cases. Absolutely. The officers go into the house and remove a parent and are going to probably, unfortunately, in a lot of those cases, a fair amount of force ends up being used to get the parent removed from the house. It's going to be ugly, and the child may very well be traumatized. But that cannot result in a tort claim or a constitutional-type tort claim that you have now scarred the parental-child relationship at a psychological level that we're going to now hold the government responsible. Again, this, and especially in a case like this, where the seizure, the arrest, was a lawful arrest and seizure of the mother pursuant to a valid arrest warrant for a felony crime. There is no basis that I am aware of in the law for finding the government liable or telling the government you now can be sued and tort, basically, for interfering with the family relationship. When the government arrests someone, convicts them of a crime, and puts a parent in prison, they've actually separated the child from the parent for a long period of time. That doesn't give rise to a constitutional claim, either by the child or the parent, for interfering with their familiar relationship. Obviously, the district judge did not reach the question of qualified immunity. I don't want to spend, really, a lot of time on it. I don't think that it can be said seriously that the law was clearly established that what the officer did here was inappropriate. It's one thing to broadly use the word seizure or broadly use the word detained and say, well, the right to be free from detainment is well-established. The right to be free from an improper seizure is well-established. That isn't the standard. The standard is, was the law dealing with a factual situation of this magnitude so clearly established that the officer, a reasonable officer, would know you cannot do this? I don't think that can be seriously argued that it was clearly established. And under those circumstances, the district court didn't feel the need to reach it because the district court, I think, rightly was of the view that there was no constitutional violation. But even if you were to decide that there was one, I believe that the officer would receive qualified immunity and would, therefore, the suit would not proceed against the officer individually. And with respect to the customer policy issue, again, it seems to be that the argument being advanced is, well, the policy was so inadequate that it rises to the level of a policy that was either shocks the conscious or amounts to deliberate indifference. And respectfully, telling the officers that they have to exercise their discretion in deciding how to best deal with the children, I think is actually an appropriate policy. You don't want to have a policy where the child automatically has to be sent to child custody, to child haven, is what we would call it in Nevada, or in Las Vegas, because you will have circumstances, and this was one of them, by the way, where it was better to allow a family friend to come and get the children. It was a half an hour. It was actually, I would suspect, less amount of time spent getting the friend over there than it would have been getting someone to come from child haven to take the children into custody and then have to deal with them under those circumstances. The friend here was able to come, half an hour, the children were home promptly. So to say that because you have a policy that leaves it or grants discretion to the bailiffs to deal with the circumstances, I don't believe also cannot be claimed that it arises to the level of a constitutional violation or that any violation stems from a customer policy. And with that, I believe that the other issues, including the state law questions, are covered by the briefs. If you have any questions for me, I'd be happy to answer them. Thank you, counsel. Thank you. Case just argued is submitted. And do you guys need a break? No, that's good. OK, OK. You need a break? I'm good. OK. We'll hear argument in Silverbrand versus Rowe.
judges: Goodwin, Hug, Tallman